UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY JOHNSON,

              **Plaintiff,**          **CIVIL ACTION NO. 09-CV-11881**

   **vs.**

                             **DISTRICT JUDGE JOHN CORBETT O'MEARA**

**COMMISSIONER OF**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

              **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary

Judgment (docket no. 10, 14) be DENIED, Defendant's Motion For Summary Judgment (docket no.

13) be GRANTED and the instant Complaint DISMISSED.

***

**II.**    **PROCEDURAL HISTORY:**

       Plaintiff filed applications for a period of disability and Disability Insurance Benefits and

Supplemental Security Income on January 30, 2006 alleging that he had been disabled since May

15, 2000 due to high blood pressure and a severed finger with nerve and tendon damage[1]. (TR 60,

65, 77). The Social Security Administration denied benefits. (TR 53-57). A requested *de novo*

hearing was held on September 4, 2008 before Administrative Law Judge (ALJ) Anthony B. Roshak

who subsequently found that the claimant was not entitled to a period of disability or Disability

---

[1] Plaintiff's original onset date was October 12, 1998 and he amended the onset date.
(TR 60, 93, 212).

Insurance Benefits or Supplemental Security Income because he was not under a disability at any time from May 15, 2000 through the date of the ALJ's November 19, 2008 decision[2]. (TR 27, 198). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 4-6). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial was supported by substantial evidence on the record.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff was forty-four years old at the time of the administrative hearing. (TR 203). Plaintiff has a ninth-grade education and past work experience as a mechanic. (TR 204). Plaintiff testified that he cannot read or write and that as a mechanic a co-worker would fill out paperwork for him or read the work orders to him. (TR 211).

Plaintiff lives with his mother and she cooks for him. (TR 204, 214). Plaintiff testified that he watches about three hours per day of television and sleeps due to his medication. (TR 205). Friends and relatives visit him at the house because he cannot "get around too much." (TR 205). He performs no housework or grocery shopping. (TR 205-06). Plaintiff testified that he drinks two or three cans of beer if his brother brings it to him and he does not take any illegal drugs. (TR 207). He cannot climb stairs because his left leg hurts. (TR 207). He testified that his entire left side is numb and causes him to fall and his brother helps him to the bathroom and back to bed at night. (TR 207). He testified that he gets shots in the leg and arm but they are only effective for a couple

---

[2]The ALJ adjourned a July 1, 2008 hearing to allow Plaintiff time to secure representation and submit his medical records. (TR 191-97).

of days. (TR 215). He takes care of his own personal needs including washing, bathing and dressing. (TR 207).

Plaintiff testified that he can sit for about one hour, stand for twenty minutes before he has to sit down and walk approximately two blocks before he must sit and rest. He cannot lift his left arm "too high" due to pain. (TR 208). The tip of his right index finger was severed and it aches. (TR 213-14). He testified that to pick up coins he has to slide them into his hand and it takes him additional time to fasten buttons. (TR 208). He can "barely lift" five pounds with his left arm and can carry a gallon of milk with his right hand. (TR 209). He has difficulty bending, pushing, pulling, stooping, kneeling and climbing, and handling, seizing, holding, and grasping things. (TR 209-10). He has trouble hearing detailed instructions and sometimes has trouble remembering them. (TR 209). He testified that he has trouble concentrating and maintaining attention. (TR 209). He testified that he sometimes sees things and has trouble with his hearing but cannot afford a hearing aid. (TR 210).

Plaintiff testified that he has no problem getting along with supervisors or co-workers. (TR 210). He does not drive and does not have a valid driver's license. He uses public transportation when he can or his neighbor takes him to doctors appointments. (TR 211). Plaintiff did not identify any mental or emotional problems when asked by the ALJ. When asked by his attorney whether he suffered from "any kind of depression" or "mental illness," Plaintiff responded "yes" and that he had "just lost his father and it's really bothering me now." (TR 213, 215).

### B.    Medical Evidence

Plaintiff's appeal focuses on the ALJ's findings related to his chronic pain impairment and mental impairment and he raises no other challenges to the ALJ's findings regarding his physical limitations. The Court has considered the entire record yet limits its medical evidence discussion

with respect to Plaintiff's physical impairments and incorporates the evidence relating to Plaintiff's mental impairments and chronic pain in the analysis sections below.

On May 23, 1997 Plaintiff reported to the emergency room with numbness and left side weakness. (TR 132-45). During this examination Plaintiff reported that two weeks prior, he had been walking in the mall when his left-side became numb and he fell. (TR 132). Plaintiff complained of lightheadedness and dizziness. (TR 132). Plaintiff was admitted to the hospital and "neurology was consulted to rule out TIA." (TR 132, 146-55). A CT scan of Plaintiff's head was negative and his neuro examination was normal. (TR 132, 135, 158). An MRI revealed an area of high-signal that was nonspecific and was noted as a "finding that has been associated with migraines" and a 3 cm round fluid structure in the maxillary sinus compatible with mucus retention cyst or polyp. (TR 159). The MRI was otherwise normal. Plaintiff was diagnosed with transient ischemic attack[3] and discharged on May 30, 1997 with a recommendation to take aspirin. (TR 132-33).

In October 1998 Plaintiff underwent surgery for nerve repair of his left hand following a tendon injury resulting from a deep laceration over his palm at the base of the middle and ring fingers. (TR 167-72). In July 1999 Plaintiff was examined at an audiology rehabilitation department following a report of unilateral hearing loss in the left ear in June 1999 with intermittent

---

[3] Despite Plaintiff's counsel's allegation to the Appeals Council that Plaintiff had a "past stroke," there are no medical records which give a diagnosis of a stroke. (TR 186). All references to a stroke within the record are notations of and a result of Plaintiff's self-reports. (TR 143). The Final Report following his January 2006 emergency room visit for amputation of the tip of his right second digit notes that Plaintiff has a "history of MI [myocardial infarction] and a stroke" but it is not clear that this is based on anything other than Plaintiff's own report. (TR 95). A clinical notation dated June 12, 2007 reports "possible stroke in the past." (TR 108). Plaintiff reported that he had an MI and stroke in 1995 which had resolved completely. (TR 109).

tinnitus. (TR 166). Plaintiff had normal hearing through 4000 Hz for the right ear sloping to severe Sensorineural Hearing Loss (SNHL) at 8 KHz and a moderate SNHL through 4000 Hz for the left ear, sloping to severe SNHL. The treatment provider noted excessive cerumen in the right ear, recommended and referred Plaintiff to an ENT for unilateral tinnitus and recommended cerumen management with tympanometry recheck pending the same. (TR 166).

In March 2000 Plaintiff reported to the emergency room with complaints of chronic right elbow pain. (TR 174). Plaintiff was diagnosed with "right sided tennis elbow or epicondylitis" and the treatment recommendation was for nonsteroidals and pain medication. (TR 175-76). Plaintiff's hearing was noted as "grossly normal."[4] (TR 174).

On January 16, 2006 Plaintiff reported to the emergency room following an accident in which he sliced off the tip of his right index finger which was identified as a soft-tissue amputation. (TR 95-102). The Final Report Emergency Treatment Note states:

> The patient is a mechanic and he was working. He was wearing a glove and as he stuck his hand in the engine the glove was pulled by a pulley and his finger was pulled with it and the tip of his finger was sliced off; it is his right index finger." (TR 95).

Plaintiff underwent debridement and laceration repair. (TR 96). Plaintiff was prescribed Keflex, Vicodin, Motrin and was given subcutaneous morphine for pain prior to and after the surgery and Vasotec for elevated blood pressure. (TR 96). Plaintiff was advised to follow-up with the family clinic for blood pressure and with the hand and orthopaedic clinic for his finger. (TR 96). Plaintiff underwent an examination at the DMC Psychiatry Intake and Emergency department on July 25, 2008, set forth in detail below. (TR 124-28).

---

[4]Similarly, on examination in January 2006 Plaintiff's hearing was described as "grossly normal." (TR 96).

### C.    Vocational Expert

The Vocational Expert (VE) testified that Plaintiff's past work as a mechanic was at least semi-skilled and medium in exertion, with no transferable skills.  (TR 217).  For the first hypothetical question, the ALJ asked the VE to give full credibility to Plaintiff's testimony and consider his age, education, and the exertional limitations to which he had testified, and the limited ability to sit, stand, walk, lift, carry, push or pull.  (TR 217).  The VE testified that Plaintiff could not perform his past work, but could perform bench-type jobs including assembler, packager, sorter and visual inspector in a limited range of light jobs and sedentary jobs, totally at least 12,000 jobs in southeastern Michigan.  (TR 217).

The ALJ asked the VE to consider Plaintiff's non-exertional limitations.  (TR 218).  The VE testified that some of Plaintiff's testimony about limitations would be disruptive on a job, for example, needing help to use the bathroom, his left side "giving out" and his falling as a result, and problems with attention, concentration and depression.  (TR 218).  The VE testified that there was no conflict between his testimony and information in the Dictionary of Occupational Titles (DOT) except where the VE testified to jobs which allowed alternating between sitting and standing and that the DOT is silent as to the existence of a sit/stand option.  The VE based his testimony upon his "experience placing workers in the kinds of jobs mentioned and enumerated."  (TR 218).

### IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through December 31, 2005, had not engaged in substantial gainful activity since May 15, 2000 and suffers from status post soft tissue amputation of the tip of the right second digit, chronic pain, hypertension, an adjustment disorder with mixed features and a history of alcohol abuse, all severe impairments, he does not have an impairment or combination of impairments that meets or equals the Listing of

Impairments. (TR 18, 77). The ALJ found that Plaintiff's allegations regarding the extent of his symptoms were not totally credible and although Plaintiff could not perform his past work, he has the ability to perform simple unskilled sedentary work and there are jobs that exist in significant numbers in the economy which Plaintiff can perform. (TR 19, 26). Therefore he was not suffering from a disability under the Social Security Act from May 15, 2000 through the date of the ALJ's decision. (TR 27).

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial

evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)      he was not presently engaged in substantial gainful employment; and

(2)      he suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See id.* at §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).

Plaintiff argues that the ALJ failed to develop the record, ignored Plaintiff's indigency by noting his non-compliance with treatment and showed bias against Plaintiff both at the hearing and in the decision. Plaintiff also argues that the RFC did not accurately portray his mental impairments and nonexertional limitations.

8

### C. Analysis

#### 1. *Whether the ALJ Properly Developed The Record*

Plaintiff argues that the ALJ failed to properly develop the record when he refused Plaintiff's attorney's request for a neuropsychological consultative examination and a consultative examination to determine whether Plaintiff can read. (TR 10). Under 20 C.F.R. sections 404.1517 and 416.917, if a claimant's medical sources cannot or will not give sufficient medical evidence about a claimant's impairment for the Commissioner to make a decision about disability, the Commissioner may ask the claimant to have one or more physical or mental examinations or tests. 20 C.F.R. §§ 404.1517, 416.917; *see also* 20 C.F.R. §§ 404.1512(f), 416.912(f). The ALJ is not required to refer a claimant for additional testing but "has the discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

Despite the ALJ's comment at the hearing regarding the expense of the requested consultative examinations, the ALJ fully considered the diagnosis of an adjustment disorder and the accompanying examination report and evidence related to the alleged mental impairment. The ALJ pointed out the resulting conservative treatment recommendations and the lack of follow-up or further treatment by Plaintiff. The ALJ referenced several of Plaintiff's own reports regarding his abilities, which do not evidence work-related limitations due to a mental impairment. The ALJ pointed out that Plaintiff on a Function Report had denied limitations with concentration, memory or understanding and was able to follow spoken directions and get along with authority figures. (TR 25, 82-85). An MRI of the brain was essentially normal. (TR 159).

The ALJ was within his authority to deny the request for examinations based on the lack of objective evidence of Plaintiff's alleged impairments, including illiteracy. *See Howell v. Sullivan*,

950 F.2d 343, 349 (7th Cir. 1991) ("Given the lack of any medical evidence in the record to support Howell's complaints of depression and alcoholism, the ALJ was under no duty to order a consultative examination."). The ALJ pointed out Plaintiff's self-report that he spent his days reading and watching television. (TR 24, 80).

The Court notes that Plaintiff submitted to the Appeals Council school records from the sixth through ninth grade, which Plaintiff alleges support his allegation of illiteracy. These records were not before the ALJ and are discussed below. For the reasons set forth below, the Court should find that the records do not warrant remand pursuant to sentence six of 42 U.S.C. § 405(g).

The ALJ had sufficient evidence before him to consider Plaintiff's mental impairments and related limitations and did so, fully explaining his consideration of the evidence in his written decision. His decision to order no further psychological and/or literacy examinations was within his authority and his disability determination was supported by substantial evidence.

## 2.    *Whether the ALJ Properly Considered Plaintiff's Treatment Record*

Plaintiff argues that the ALJ's "decision is centered on the fact that Plaintiff did not have what he considered being adequate treatment." (Docket no. 10). Plaintiff further argues that "[f]inding a claimant not disabled due to noncompliance is acceptable only in circumstances where there is no good reason for noncompliance, " citing 20 C.F.R. sections 404.1530(b) and 416.930(b). (Docket no. 10). Plaintiff is correct that when an ALJ makes a determination based on a failure to follow prescribed treatment, the ALJ must consider any limitations to determine whether there is an acceptable reason for the failure to follow prescribed treatment. 20 C.F.R. §§ 404.1530(b), (c), 416.930(b), (c). In this instance, however, the ALJ did not base his determination on a finding that Plaintiff did not follow prescribed treatment or was non-compliant, but only pointed out where Plaintiff had failed to seek any treatment, pointed out the lack of documented complaints made by

Plaintiff when treatment was sought, and pointed out the lack of prescribed or recommended limitations and the conservative nature of the treatment recommendations which were made.

In determining the credibility of a claimant's allegations of the severity of pain and other symptoms and limitations, the ALJ may consider an individual's medical treatment history. SSR 96-7p. "However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186 (S.S.A.). The ALJ correctly pointed out the instance in which Plaintiff said he could not afford treatment, which was with respect to Plaintiff's alleged hearing impairment. (TR 23, 70, 210).

The ALJ not only pointed out that Plaintiff's treatment has been infrequent but that when he has received treatment, it has been "essentially routine and/or conservative in nature, which diminishes the overall persuasiveness of his subjective complaints and alleged limitations, and suggests his symptoms may not be as serious as alleged." (TR 21). The ALJ's statement is supported by the record. The ALJ has not, contrary to Plaintiff's assertion, found that Plaintiff was "noncompliant" with treatment, but rather, that treatment as been "routine and/or conservative," certainly one of the factors which the ALJ may consider in determining credibility and severity of pain and other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c).

In May 1997 Plaintiff reported to the emergency room with complaints of left-sided numbness and pain and was diagnosed with a transient ischemic attack. (TR 132-33). In June 2007 Plaintiff's attending physician noted that Plaintiff had reported that all symptoms from the reported stroke and MI had "resolved completely." (TR 21, 109). The June 2007 physician examiner noted

that Plaintiff was in for a "check up" and that he did not have insurance before. (TR 109). The physician noted that Plaintiff has "no problem" at the present time and his hypertension was "well controlled" with his medication. (TR 109, 113). Plaintiff reported a hearing problem in the left ear and swelling of the lower left eye lid. (TR 110). Plaintiff made no other complaint of pain. (TR 109-13). In May 2007 Plaintiff was treated for swelling of the lower left eyelid, with no other complaints. (TR 114). In July 2008, the treatment provider at the Detroit Medical Center noted that Plaintiff was reporting for a follow-up examination following his complaints of his left-side collapse and left shoulder pain, which he reported on April 9, 2008. (TR 103, 104). The provider noted that Plaintiff had no complaints except for "left knee pain" and there was no swelling or redness. (TR 103). During this time period from April 2007 through July 2008 Plaintiff was prescribed Norvasc, ASA (acetylsalicylic acid (aspirin)), HCTZ (hydrochlorothiazide), Motrin, Benadryl and Procardia XL. (TR 106). The strongest pain medication which Plaintiff has been prescribed, except for the trip to the emergency room immediately following the severance of his finger tip, is Motrin. (TR 21, 90).

The ALJ also pointed out that despite Plaintiff's complaints of pain in his hand, there is no medical evidence or notation that Plaintiff complained of pain. (TR 22). In considering the severity of Plaintiff's symptoms and limitations, the ALJ properly considered the treatment records, including conservative treatment, conservative medications and essentially normal examinations[5]. The ALJ's decisions on this issue are supported by substantial evidence.

_____

[5] The ALJ also noted inconsistencies in Plaintiff's reported work. Plaintiff indicated that he stopped working in 1998, yet the earnings report showed earnings through 2000. Plaintiff amended his onset date when this was brought to his attention. (TR 66, 195, 201). Plaintiff reported that he stopped working when the company he worked for closed. (TR 66). The medical records show that in 2006 Plaintiff reported that his severed finger was a result of working as a mechanic. (TR 26, 95).

### 3.    *Whether the ALJ Exhibited Bias*

An examination of the record indicates that Plaintiff's claim of bias is not properly before the Court and, in any event, there is substantial evidence in the record to support the Commissioner's denial of benefits.  "The Social Security Act gives those claiming disability benefits a right to a hearing in which witnesses may testify and evidence may be received."  *Ventura v. Halala*, 55 F.3d 900, 902 (3d Cir. 1995).  "Although the hearing is informal in nature, due process requires that any hearing afforded claimant be full and fair."  *Id*.

The regulations provide:

> An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision.  If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity. . . . If the administrative law judge does not withdraw, you may, after the hearing, present your objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another administrative law judge.

20 C.F.R. §§ 404.940, 416.1440; *see also Ventura*, 55 F.3d at 902 ("The claimant must bring any objections to the attention of the ALJ and the ALJ shall decide whether to continue the hearing or withdraw.").

The regulations require that the issue of bias be raised at the "earliest opportunity."  20 C.F.R. §§ 404.940, 416.1440; *see also Pronti v. Barnhart*, 339 F. Supp. 2d 480, 495 (W.D.N.Y. 2004) (The *Pronti* parties alleged general bias and did not have all of the evidence necessary to raise the bias issue prior to the appeals council and district court reviews.  Therefore, the court found that plaintiffs raised the issue at the earliest opportunity.).  At the hearing, neither Plaintiff nor his counsel alleged bias relating to his claim and the questioning and statements by the ALJ.  A review of the transcript shows that neither Plaintiff nor his attorney objected to the ALJ's actions during the hearing.

Although Plaintiff raised the issue of bias to the Appeals Council, his allegations rely on evidence from the September 4, 2008 hearing transcript, therefore the earliest opportunity for Plaintiff to object would have been during that hearing. (TR 185-86). For this reason, the Court should find that Plaintiff failed to exhaust his administrative remedies with respect to this issue. Therefore, the Court is precluded from reviewing the issue of the ALJ's bias.

Even if the Court were to consider Plaintiff's allegations of bias, the Court finds that there is no evidence that the ALJ "did not function in a judicial capacity, or that he entertained preconceived notions . . . in this particular case." *Parchman v. U.S. Dep't of Agriculture*, 852 F.2d 858, 866 (6th Cir. 1988). Plaintiff has not met his burden of establishing that the ALJ was biased. *See Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 364 (6th Cir. 2004). The comment by the ALJ that he "wouldn't take my car there to have you fix it," was directed to Plaintiff's attorney when the attorney suggested that it was not necessary to be able to read or write to work as a mechanic. (TR 212). The discussion which Plaintiff cites in which the ALJ said to the attorney, "You're asking me to prove your case for you," occurred prior to the ALJ swearing in Plaintiff and prior to the beginning of questioning. (TR 201). Indeed, it is the Plaintiff's burden to prove disability through step four of the determination. "The burden lies with the claimant to prove that he or she is disabled." *Foster*, 279 F.3d at 355 (citations omitted). To the extent that this comment involved Plaintiff's counsel's request for additional consultative examinations, as set forth above, the ALJ's decision not to order a neuropsychological examination is supported by substantial evidence and despite the ALJ's comment at the hearing regarding the expense of a neuropsychological consultative examination, the ALJ fully explained his consideration of the evidence in his decision.

The Court should find that the ALJ did not exhibit bias at the hearing or in making his determination[6].

### 4.    Whether the RFC Is Supported By Substantial Evidence

Plaintiff argues that although the ALJ concluded that Plaintiff suffered from the severe impairments of chronic pain and an adjustment disorder with mixed features, the ALJ did not include limitations related to the same in his RFC. (Docket nos. 10, 14). Plaintiff also argues that the ALJ did not include in the RFC his findings that Plaintiff has moderate difficulty maintaining concentration, persistence and pace. (Docket no. 10). Despite Plaintiff's allegations, Plaintiff fails to cite any specific evidence supporting a degree of mental limitation or chronic pain limitations inconsistent with the ALJ's RFC determination.

The ALJ properly considered Plaintiff's mental impairment. The Commissioner has prescribed rules for evaluating mental impairments. *See* 20 C.F.R. §§ 404.1520a, 416.920a. The Commissioner first determines whether there is a medically determinable mental disorder specified in one of nine diagnostic categories. *See id.*; 20 C.F.R. Pt. 404. Subpt. P, App. 1 § 12.00A. Thereafter, the Commissioner measures the severity of a mental disorder in terms of functional restrictions, known as the "B" criteria, by determining the frequency and intensity of the deficits.

The "B" criteria require an evaluation in four areas with a relative rating for each area. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The Commissioner must evaluate limitations in activities of daily living, social functioning and concentration, persistence, or pace and rate those on a five-point scale ranging between none, mild, moderate, marked, and extreme. The fourth area

---

[6] The Court notes that the ALJ also adjourned a July 1, 2008 hearing to allow Plaintiff additional time to submit his medical records and find representation. (TR 195). Plaintiff was represented by an attorney at the September 4, 2008 hearing. (TR 198).

is deterioration or decompensation in work or work-like settings and calls for a rating of never, one or two, three, and four or more. "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

In evaluating Plaintiff's mental impairments, the ALJ concluded that Plaintiff has no restrictions in activities of daily living and mild difficulty in the ability to maintain social function, moderate difficulties in maintaining concentration, persistence or pace and has no documented episodes of extended decompensation. (Docket no. 18). As an initial matter, there is no challenge to this finding and it is supported by substantial evidence in the record, including the Intake Data Sheet from Plaintiff's examination at the hospital in Psychiatric Intake and Emergency, Plaintiff's activities of daily living, and Plaintiff's self-reports prior to the hearing. (TR 80-86, 124).

With respect to Plaintiff's diagnosis of an adjustment disorder with mixed features, Plaintiff reported for an emergency psychiatric evaluation on June 25, 2008, seven days after his father died and the day after he was buried[7]. (TR 124). Plaintiff reported that he was there for an evaluation for SSD. The examiner noted that Plaintiff reported that he felt sad, had been unable to work due to health issues and that he "can't read or write that well." (TR 124). It was noted that Plaintiff reported "fair" appetite and sleep and that he hears voices and sees mice running on the floor and occasionally feels that people watch him when he is in public. (TR 124). It was noted that Plaintiff denied suicidal ideation or intent, reported never having seen a psychiatrist and was never on psychiatric medication but was willing to start outpatient psychiatric treatment. (TR 124). Plaintiff

---

[7] This date also post-dates Plaintiff's date last insured: December 31, 2005. (Docket no. 17). Plaintiff's disability report dated February 29, 2008 does not include any report of mental impairments. (TR 65-70).

reported drinking four cans of beer a day, four days a week, "sometimes everyday" and using marijuana once a month. (TR 124). The examiner noted that Plaintiff reported having finished the ninth grade and taking regular classes, and that due to injuring his right hand in 2006 he "can't write now." (TR 125). Plaintiff reported that his left side "goes out" on him sometimes and he suffers dizziness due to high blood pressure. (TR 125). Plaintiff reported that he was deaf in his left ear and needed a hearing aid but "didn't go back yet" for follow-up. (TR 126).

The examiner reported that Plaintiff's insight and judgment were "fair" and he was oriented in all spheres. (TR 126). Plaintiff was cooperative and maintained eye contact and had some spontaneous speech. (TR 126). The examiner concluded that Plaintiff had an adjustment disorder with mixed features (309.28), a history of alcohol abuse (305.0) and assigned a GAF of 60. (TR 127). Plaintiff was advised to follow-up at a designated health center, enroll in Gateway and was prescribed "no medications at this time." (TR 128).

As the ALJ pointed out, Plaintiff's recommended treatment was conservative, he was not prescribed medication and he was referred for outpatient follow-up. (TR 128). In February 29, 2008 Plaintiff had reported that he had no new physical or mental limitations since his January 30, 2006 Disability Report. (TR 88). The ALJ also pointed out that Plaintiff reported needing no help or reminders to take medicine or take care of personal needs or grooming and no reminders to go places. (TR 82, 84). Plaintiff reported being able to pay bills and count change and reported that he could pay attention for thirty minutes. (TR 83, 85). Plaintiff reported that he does not follow written instructions "so well," but that he can follow spoken instructions "very well." (TR 85).

Plaintiff argues that the ALJ did not consider the stress levels of particular jobs, did not consider which simple job assignments would be appropriate for Plaintiff and "should have incorporated nonexertional parameters such as limited dealing with co-workers, no contact with the

general public, ability to read and write, and ability to take unscheduled breaks due to panic attacks, emotional liability, and chronic pain." (Docket no. 10). The Court finds it telling that despite the allegations of the restrictions which the ALJ *should have* incorporated, there is no citation to evidence supporting these alleged limitations. Plaintiff himself reported that he handles stress "fairly," gets along "well" with authority figures, has never been fired or laid off due to problems getting along with others and handles changes in routine by making adjustments as needed. (TR 86). There is simply no evidence of record to support greater limitations than those set forth in the ALJ's RFC. The ALJ's limitation to simple, unskilled work addresses Plaintiff's limitation with respect to maintaining concentration, persistence or pace. (TR 25).

The ALJ properly pointed out that Plaintiff has a non-exertional limitation to performing unskilled sedentary work but that no greater limitations are justified. (TR 19, 26). The ALJ relied on the Grid as a framework for his step five determination, specifically Rule 201.25, and noted that administrative notice was taken of the number of unskilled jobs which exist throughout the economy at the various exertional levels, which include approximately 200 separate unskilled sedentary occupations. (TR 27), 20 C.F.R. Pt. 404, Subpart P, App. 2 § 201.00(a). Plaintiff's RFC and the ALJ's findings do not further erode the number of unskilled sedentary jobs set forth in Rule 201.00(a) and (b). *See Ortiz v. Sec'y of Health and Human Servs.*, 890 F.2d 520, 526 (1st Cir. 1989). The ALJ found that this constituted a significant number of jobs in the economy that Plaintiff can perform.

Similarly, the evidence of record does not support Plaintiff's argument that he is illiterate. As the ALJ pointed out, the record contains reports by Plaintiff that he can "read" and/or "read and understand English," for example, on a Disability Report dated February 29, 2008 Plaintiff indicated that "yes" he can "read and understand English" and "yes" he can "write more than [his] name in

English" and on a Function Report dated February 10, 2006 Plaintiff reported that he spends his days "reading, and watching T.V." (TR 65, 80). In a face-to-face interview with Plaintiff on February 1, 2006 the examiner noted "no" difficulties with reading. (TR 78). Plaintiff also reported that he did not attend special education classes in school. (TR 69).

Plaintiff submitted to the Appeals Council four pages of school records (one page is a duplicate) dated from the semester ending June 1977 through the semester ending June 1981 and constituting the sixth through ninth grades. (TR 188-90). In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Sec'y*, 974 F.2d 680, 685 (6th Cir. 1993).

The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt*, 974 F.2d at 685 (*citing Richardson*, 402 U.S. at 401). The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster*, 279 F.3d at 357. This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton*, 2 F.3d at 696 ("Where a party presents new evidence on

appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted).

Plaintiff did not request a remand of this case pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of the school records. The Court did, however, consider the records to determine whether a sentence six remand is appropriate. The school records pre-date the ALJ's November 19, 2008 decision and Plaintiff has offered no reason for the production of these records after the ALJ's decision. The Court finds that although the material was not before the ALJ and the grades are not duplicative of material in the record, the records are not material. Although the records show that Plaintiff failed the sixth grade and received some failing grades in English, history, mathematics and swimming, there is not a reasonable probability that the ALJ would have reached a different decision in this matter if he had the records. The records are consistent with Plaintiff's testimony that he went to school through the ninth grade and the records show a 5.6 grade reading equivalent. (TR 189). Furthermore, the ALJ relied on the Grid at Medical-Vocational Rule 201.25 to find that Plaintiff was not disabled. Rule 201.25 provides that a younger individual age 18-44, with the ability to perform sedentary work with previous skilled or semi-skilled work experience[8], skills not transferable and with limited or less education, at least literate and able to communicate in English, is not disabled. The same individual, illiterate or unable to communicate in English, would also be found to be not disabled pursuant to Rule 201.23. *See also* 20 C.F.R. Pt. 404, Subpart P, App. 2 § 201.00(i) ("[T]he primary work functions in the bulk of unskilled work relate to working with things (rather than data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance."). Plaintiff has not shown good cause for the

---

[8] The VE testified that Plaintiff's past work experience was "at least semi-skilled." (TR 217).

failure to produce these documents for inclusion in the hearing before the ALJ and the records are not material. Plaintiff has not shown that a sentence six remand is warranted in this instance.

The ALJ's decisions shows that he properly considered the entire record. The ALJ's findings with respect to Plaintiff's RFC are supported by substantial evidence. "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *See Casey*, 987 F.2d at 1233 (citing *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989)). "It is the rare case, the exception, in which every piece of evidence points incontrovertibly towards the holding." *Phillips v. Sec'y of Health & Human Servs.*, 812 F.2d 1407 (6th Cir. 1987). The ALJ's decision was supported by substantial evidence in the record and his findings were articulated in his decision.

## VI.     CONCLUSION

The ALJ's decision was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary Judgment (docket no. 10, 14) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 13) should be GRANTED and the instant Complaint DISMISSED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not

preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: April 19, 2010               s/ Mona K. Majzoub                          
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE



**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: April 19, 2010               s/ Lisa C. Bartlett      
                                    Case Manager